IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LOUIS ROY CHAPMAN,**

    Plaintiff,

v.                                                                  Civil Action No. **3:25CV260**

**HOPE ALEXANDER,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Louis Roy Chapman, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court for evaluation of Chapman's Second Particularized Complaint, (ECF No. 9), pursuant to 28 U.S.C. § 1915A. Chapman's Eighth Amendment claims against Defendants Dr. Esochaghi and NP Alexander survive the screening process, but the remainder of Chapman's claims will be dismissed.

### I.    PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the operative complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A. A claim is frivolous when it is based upon "an indisputably meritless legal theory," or when its "factual contentions are

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

clearly baseless." *Clay v. Yates,* 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).

Whether a complaint fails to state a claim upon which relief may be granted is determined by applying the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin,* 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable," *id.* "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.   PROCEDURAL HISTORY

In April 2025, Chapman filed his original Complaint, which the Court screened and found to be legally deficient in a Memorandum Order dated July 18, 2025. (*See* ECF No. 6.) Specifically, the Court observed that Chapman's Complaint "fail[ed] to provide each defendant with fair notice of the facts and legal basis upon which his or her liability rest[ed]." (*Id.* at 1.) Accordingly, the Court directed Chapman to file a particularized complaint. (*Id.* at 1–2.)

In line with the Court's directive, on August 13, 2025, Chapman filed a Particularized Complaint. (ECF No. 7.) It, like its predecessor, was legally deficient. (*See* ECF No. 8). In screening this pleading, the Court noted that, "[a]lthough [Chapman] indicate[d] that each claim [was] for deliberate indifference under the Eighth Amendment, it [was] unclear exactly on what theory or theories [Chapman] believe[d] each defendant [was] liable." (*Id.* at 1.) The Court thus offered Chapman the opportunity to file a second particularized complaint and provided explicit

directions as to the formatting of any such pleading. (*Id.*) The Court informed Chapman that the third paragraph of his second particularized complaint would be required to "identify each federal or civil right violated" and stated that the Court would "only consider rights specifically identified" in line with this direction. (*Id.* at 2.) The Court directed Chapman to separately label any subclaims and warned that it would not "parse through [the second particularized complaint] to find claims that [were] not clearly identified." (*Id.*)

On October 1, 2025, Chapman filed his Second Particularized Complaint. (ECF No. 9.)

### III.   ALLEGATIONS AND CLAIMS

Chapman asserts that, while incarcerated at Lawrenceville Correctional Center ("LCC"), several officials violated his rights under the Eighth Amendment[2] by misdiagnosing, mistreating, and later concealing a medical condition from which he suffered. Chapman names the following individuals as defendants: Nurse Practitioner Hope Alexander ("NP Alexander"); Dr. Iheanyichukwu Esochaghi ("Dr. Esochaghi"); S. Richardson, RN, DON ("RN Richardson"); Sgt. C. Lipscomb ("Sgt. Lipscomb"); and Global Exports and Outsourcing Inc. ("GEO, Inc."). (*Id.* at 1.)[3] Specifically, Chapman alleges as follows:

> 1.   September 29, 2023, Dr. Iheanyichukwu Esochaghi's office. Chapman showed [Dr. Esochaghi] red sores with yellow tops on the left side of his left knee. Dr. Esochaghi took no samples [and] [m]isdiagnosed it as a rash. It was actually the beginning of scabies [t]hat would spread from Chapman's neck to the soles of his feet [b]ecause of Dr. Esochaghi's misdiagnosis. Causing Chapman severe pain and suffering.
> 2.   Dr. Esochaghi prescribed triamcinolone, hydrocortisone, calamine lotion, and Claritin for "poison ivy, poison oak, poison sumac, external genitalia, feminine and anal itching." Wrong medication. (Exhibit S)

---

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] The Court employs the pagination assigned by the CM/ECF docketing system. It also corrects the capitalization, spelling, and punctuation in quotations from Chapman's submissions to improve readability.

4

3. November 3, 2023, in the bloodwork lab, Nurse Easter and B. Overton, RN Triage Nurse, saw the red sores and yellow tops on Chapman's arms. Overton told Chapman it could be something different than the rash Dr. Esochaghi diagnosed, September 29, 2023. Because the ointment was not working, Overton told Chapman [to] file a sick call request. He would take care of it.

That same day, Chapman filed a sick call request. No response. (Exhibit T)

4. November 8, 2023, 4:49 p.m., Sgt. Lipscomb, a non-clinician, also saw the red sores with yellow tops on Chapman's arms and legs. Chapman showed Lipscomb his medical emergency grievance #175244. (Exhibit V)

Chapman asked Lipscomb to sign it and give him a receipt.

5. Lipscomb read Chapman's medical emergency grievance out loud in the presence of multiple inmates, violating medical privacy. Lipscomb asked, "is this about ointment?" Chapman did not want to answer because this is a private medical issue. (Scabies)

6. Lipscomb refused to process Chapman's medical emergency grievance #175244.

7. Lipscomb, a non-clinician, said, "this is not an emergency."

8. Lipscomb is in violation of Operating Procedure 720.1 Access to Health Services; IV(A)(3). "No security or administrative staff will approve or disapprove requests for medical care." And OP 701.1 Health Services Administration IV(B)(6)(F): "Clinical decisions are the 'sole province' of the responsible health care provider" and are "not countermanded" by "non-clinicians." (Exhibit LL)

9. Lipscomb, a non-clinician, has no authority to make a medical decision.

. . . .

16. November 15, 2023, Dr. Esochaghi diagnosed Chapman with scabies. Dr. Esochaghi did not tell Chapman. Did not make a medical plan. That same date Dr. Esochaghi admitted the medication he prescribed did not work. (Exhibit Z)

Causing Chapman excruciating sustained pain and suffering.

Chapman learned of the scabies diagnosis when he received a copy of his medical records. (Exhibits AA, AA-1, BB)

17. November 16, 2023, because Dr. Esochaghi took no samples [and] ran no tests, Chapman filed grievance LVCC-23-WRI-00107. (Exhibit CC)

Same day, Chapman sent [a] request to Dr. Esochaghi, [stating] "I believe this is more than a rash. I want to see an outside dermatologist specialist." No response. (Exhibit DD) Chapman had not received a copy of his medical records by November 16, 2023.

18. November 22, 2023, after eighteen (18) days and four (4) sick call requests, B. Overton, Triage Nurse, wrote Chapman a medical pass to see Hope Alexander (NP) November 27, 2023.

19. November 27, 2023, Chapman gave the medical pass, with Overton's signature, to Medical Officer Brown. Brown took the pass to Alexander (NP). Brown came back [and] told Chapman [that] Alexander said she was not going to see him. Chapman asked Brown to go back and tell Alexander he had a Medical Pass from Overton. He was in severe pain and needed to see her.

After Chapman waited half an hour, Alexander came out with an arrogant unprofessional attitude.

5

Chapman told Alexander he was in severe pain. Chapman tried to show Alexander the red sores with yellow tops. Even though Chapman was in severe pain with a valid medical pass, Alexander repeated multiple times, "I am not going to see you."

20. November 27, 2023, 9:30 a.m., Hope Alexander (NP) and GEO refused to see Chapman, who had a valid medical pass from the Triage Nurse, B. Overton. Twenty-four (24) days after Chapman talked with Overton. (Exhibit B)

In the time it took Alexander to tell Chapman she was not going to see him, Alexander could have examined Chapman, avoiding this civil rights action.

. . . .

23. November 30, 2023, S. King (HSA) came to 72 POD where Chapman lives. Chapman showed her his arms with red sores and yellow tops. King told Chapman she would get him in to see Dr. Esochaghi no later than December 4, 2023. Chapman told King he wanted to see an outside dermatologist specialist.

24. December 1, 2023, three (3) months after Chapman's issue began with red sores with yellow tops on his left knee, King called him to medical. Alexander, King, Burrero (RN) and Chapman were in the examination room. Alexander asked, "Does it itch?" Chapman said, "Yes"

Chapman showed them his arms with red sores and yellow tops. Alexander had Chapman pull his pant legs and shirt up to show the red sores with yellow tops. With the lights off, Alexander, using a Woods Light, scanned Chapman's exposed skin. All four (4) could clearly see in three (3) months, all over Chapman's body the red sores with yellow tops had spread from a few on his left knee to a glowing bright yellowish green discoloration of Chapman's skin from his neck to the soles of his feet.

Alexander said, "This is fungus." Misdiagnosis.

25. Chapman told Alexander he needed to go to an outside dermatologist specialist. Alexander said, "You don't need to."

26. Chapman told Alexander, September 2023. Tony Norton #2155829 came from Nottoway Correctional Center receiving.

Norton was assigned to the same cell as Chapman. Norton brought the red sores with him constantly scratching.

Chapman asked Alexander, "Could this come from Norton?"

Alexander said, "No, only if Chapman was in the same bed."

This statement is a violation of the Prison Rape Elimination Act (PREA).

The inference is Chapman is a homosexual. He is not.

27. Alexander told Chapman to throw away all the medication Dr. Esochaghi prescribed . . . .

28. Alexander prescribed Diflucan 100 mg, Bactrine DS, Miconazole Nitrate Cream USP 2% and Tolnofate Anti-Fungal Powder 1% for athlete's foot. (Exhibit G) Chapman does not have athlete's foot.

29. December 14, 2023, after multiple sick call requests, Nurse Booth came to 72 POD with a medical pass for December 15, 2023. The medication Alexander prescribed was not working. Chapman is in excruciating pain. Can't sleep. Can't rest.

30. December 15, 2023, in medical, Nurse Booth told Chapman he was there for sick call, acting as if Chapman was not going to see Alexander. Chapman told Booth he didn't need to see a nurse. He was there to see Alexander.

Alexander came out [and] told Chapman, "you have to follow protocol" [and] "this is a joke."

Alexander did not follow protocol November 27, 2023 when she refused to see Chapman, who was in severe pain and had a valid medical pass from B. Overton, Triage nurse.

As a direct result of Alexander's refusal, scabies spread from Chapman's left knee, covering his body from his neck to the soles of his feet. (Exhibits B, C)

31. In violation of HIPAA Privacy Rules, Alexander did not take Chapman to an examination room. Alexander had Chapman sit in a chair in front of the nurse's station counter in the middle of [the] medical waiting room, embarrassing Chapman in front of two (2) inmates. Rasheed, medical worker, sitting by the eye wash station. The other across from him. Sitting by the mechanical scales. Less than ten (10) feet away.

Alexander had Chapman pull up his shirt sleeves and pant legs.

Chapman asked Alexander, "What is the name and type of fungus?"

Alexander did not answer. Alexander took no samples.

32. Chapman's body looks grotesque. Chapman is in constant severe pain. Chapman has no relief because the medication Alexander prescribed is not working.

33. December 15, 2023, Alexander admitted in writing [that] "the treatment indicated [sic] x2 were ineffective."

Because of Alexander's deliberate indifference, Chapman suffered excruciating pain.

34. December 22, 2023, Chapman is in too much pain to do anything.

35. December 24, 2023, Chapman's pain is so great [that] the booth officer called and sent Chapman to medical.

Nurse Williams called Alexander, then gave Chapman Tolnofate USP 1% and Tonofate Anti-Fungal Powder 1% for athlete's foot. The same medication Alexander admitted was not working, December 15, 2023.

Chapman does not have athlete's foot. (Exhibits J, OO)

36. December 25, 2023, Chapman's skin is burning, itching red sores with yellow tops, in constant pain.

37. January 4, 2024, 3:30 p.m., after multiple sick call requests, Alexander (NP), S. King (HSA), Dr. Esochaghi and Mr. Wallace (RN), all agreed to send Chapman to an outside dermatologist specialist. (Exhibit K, K-1)

. . . .

40. January 16, 2024, Chapman filed emergency grievance #179939. "I am in constant pain. Just because what you have done did not work. To stop trying is not an option. 90 days for a dermatologist. Leaving me to suffer is egregious and an Eighth Amendment violation. My skin burns like on fire. Took my antibiotic. Constant pain." No response. (Exhibit N, N-1)

. . . .

42. February 29, 2024, 10:45 a.m., because of multiple requests, Chapman was called to medical to see Alexander.

Same as December 1, 2023, Alexander used the Woods light. Two (2) months later, still showing bright yellowish green discoloration all over Chapman's body, from his neck to the soles of his feet. (Exhibits O, O-1, P, Q, R, PP, QQ)

Alexander threw wrong medication at Chapman. Nothing worked.

. . . .

43. April 29, 2024, after seven (7) months of medical requests, letters, medical grievances, medical emergency grievances and the objection of Hope Alexander (NP), Corrections Officers O'Day and Bugg took Chapman to Dr. Yvonne Knight, outside dermatologist specialist, medical expert.

First, Chapman showed his hands to Dr. Knight. She diagnosed scabies. Dr. Knight said, "this is not fungus" as Alexander (NP) said. This is scabies.

Dr. Knight prescribed betamethasone dipropionate lotion USP 0.05% (day time), spinosed topical suspension 0.9% w/w (night time), metformin 50 mg tablets.

44. Took twenty-one (21) days for Alexander (NP), Dr. Esochaghi and S. Richardson (RN) (DON) to fill Chapman's prescription, adding to Chapman's sustained pain.

45. Dr. Knight ordered Chapman to be in a cell by himself. (Exhibit F-1)

Dr. Knight ordered new clothes, sheets, pillow cases, blankets for Chapman. All of which Chapman did with the help of O'Day, Counselor Andrews, Bugg, Ms. Mcklin intake, Ms. Jennings laundry and Mr. Wallace (RN).

Chapman put his clothes in a hazmat bag and threw them away. (Exhibit F-3)

46. Chapman had asked Alexander (NP) if he could have gotten this from his cell partner Tony Norton. Alexander said, "Only if Chapman was in the same bed." This comment is a violation of the Prison Rape Elimination Act (PREA)

Chapman asked Dr. Knight the same question. Dr. Knight said, "Yes, because of the close quarters."

. . . .

48. Had Chapman not been tenacious and not gone to Dr. Knight, he would not have received proper medical treatment. (Exhibit F 1-3)

49. S. Richardson, RN, Don and GEO are responsible for responding to sick call requests and emergency grievances.

50. 64% of the time S. Richardson did not respond to Chapman's sick call requests.

51. 93% of the time S. Richardson denied Chapman medical treatment for sick call requests.

52. 67% of the time S. Richardson did not respond to emergency grievances.

53. 100% of the time S. Richardson denied Chapman medical treatment for emergency grievances.

(ECF No. 9, at 1–10.) Chapman raises the following claims for relief:

Claim One   "This concerns Dr. Iheanyichukwu Esochaghi and GEO misdiagnosed medical condition, prescribed wrong medication did not work, concealed

8

|               | scabies diagnosis. Deliberate indifference an Eighth Amendment violation." (*Id.* at 11.) |
|---------------|---|
| Claim Two     | "This concerns Hope Alexander NP, and GEO refused Chapman medical treatment. Misdiagnosed medical condition. Prescribed wrong medication admitted medication did not work. Deliberate indifference an Eighth Amendment violation." (*Id.* at 12.) |
| Claim Three   | "This concerns Sergeant C. Lipscomb, a non-clinician and GEO refused to process Chapman's medical emergency grievance. Stating 'this is not an emergency' deliberate indifference an Eighth Amendment violation." (*Id.* at 16.) |
| Claim Four    | "This concerns S. Richardson (RN) (DON) and GEO did not respond to sick call requests and medical emergency grievances. Deliberate indifference an Eighth Amendment violation." (*Id.*) |

Chapman seeks monetary damages. (*Id.* at 20.)

## IV.   ANALYSIS

Chapman adequately alleges that Defendants Dr. Esochaghi and NP Alexander violated his rights under the Eighth Amendment when they misdiagnosed, provided incorrect medications for, and later concealed his proper diagnosis to survive the Court's screening obligations. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (holding that an official violates an inmate's Eighth Amendment rights by displaying "deliberate indifference to serious medical needs"). Consequently, Claims One and Two will proceed against Dr. Esochaghi and NP Alexander.[4] The

---

[4] As discussed above, the Court informed Chapman that it would only consider "clearly identified" claims specifically raised in each section of the Second Particularized Complaint's third paragraph. (ECF No. 8, at 2.) The Court further advised Chapman that it would "not parse through this section to find claims that [were] not clearly identified." (*Id.*) Chapman flouted the Court's directives and appears to seek to raise, within Claim Two, claims based on alleged violations of PREA and the Health Insurance Portability and Accountability Act ("HIPAA") by failing to conduct his medical examination in a private setting. (ECF No. 9, at 11–13.) Even if Chapman had clearly raised these claims in the manner required by the Court, they would not entitle him to relief. *See Hamilton v. Collins*, No. 3:20cv504, 2022 WL 108410, at *4 (E.D. Va. Jan. 11, 2022) ("Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act." (quoting *De'lonta v. Clarke*, No. 7:11-cv-00483, 2013 WL 209489, at *3 (W.D. Va. Jan. 14, 2013))); *Payne v. Taslimi*, 998 F. 3d 648, 660 (4th Cir. 2021) (explaining that prisoner "ha[d] no private right of action under HIPAA").

9

claims against Sgt. Lipscomb, RN Richardson, and GEO, Inc., however, will be dismissed for failure to state a claim and as frivolous.

### A. No Constitutional Claim Based on Grievances

In Claims Three and Four, Chapman contends that Defendants Sgt. Lipscomb, RN Richardson, and GEO, Inc., violated Virginia Department of Corrections ("VADOC") policy by failing to process or respond to sick call requests and grievances.[5] (ECF No. 9, at 16.) These allegations do not support a viable constitutional claim because "inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 541 (4th Cir. 2017); *see Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Doans v. Rice*, No. 87-7244, 1987 WL 38813, at *1 (4th Cir. Oct. 15, 1987) ("Because inmate grievance procedures are not constitutionally required in state prison systems, the failure to follow grievance procedures does not give rise to a § 1983 claim."). In addition, the failure to follow VADOC institutional policy or procedure, standing alone, does not state a claim of constitutional dimension. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990). Accordingly, Claims Three and Four lack merit and will be DISMISSED for failure to state a claim and as frivolous.

---

[5] Although Chapman suggests in Claims Three and Four that Sgt. Lipscomb, RN Richardson, and GEO, Inc., demonstrated "deliberate indifference," thereby violating his rights under the Eighth Amendment (*see* ECF No. 9, at 16), the only actions Chapman actually identifies relate to the denial or failure to answer grievances. (*Id.*) Chapman does not suggest that these Defendants "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed." *Smith v. Smith*, 589 F.3d 736, 738–39 (4th Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Consequently, the Court does not view Claims Three and Four as truly asserting relief under the Eighth Amendment.

### B.   No Respondeat Superior Claim Against GEO, Inc.

Finally, in Claims One and Two, Chapman contends that GEO, Inc., should be held liable for alleged Eighth Amendment violations related to the medical care he received from Dr. Esochaghi and NP Alexander. (ECF No. 9, at 11–13.) The Court disagrees.

A private corporation cannot be held liable "for torts committed by [its employees] when such liability is predicated upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Instead, "a private corporation is liable under § 1983 *only* when an official policy or custom of the Corporation causes the alleged deprivation of federal rights." *Id.* (emphasis in original) (citations omitted). An unconstitutional official policy or custom

> can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)); *see Austin*, 195 F.3d at 729 (explaining that principles applying in context of municipality and local governments "are equally applicable to a private corporation acting under state law"). Here, Chapman does not offer any facts to suggest that a policy or custom of GEO, Inc., caused a violation of his constitutional rights. Rather, by merely naming GEO, Inc., alongside Defendants Dr. Esochaghi and NP Alexander, Chapman appears to suggest that GEO, Inc., should be held liable merely because it employed those individuals. This is insufficient. *See Austin*, 195 F.3d at 728 (opining that "a private corporation is not liable under § 1983 for torts committed by [its employees] when such liability is predicated solely upon a theory of respondeat

11

superior") (citations omitted). Accordingly, Claims One and Two against GEO, Inc., will be DISMISSED for failure to state a claim.

## IV.   CONCLUSION

Claims One and Two against Defendant GEO, Inc., will be DISMISSED for failure to state a claim. Claims Three and Four against Defendants GEO, Inc.; Sgt. Lipscomb; and RN Richardson will be DISMISSED for failure to state a claim and as frivolous. Claims One and Two against Defendants Dr. Esochaghi and NP Alexander will proceed.

An appropriate Order will accompany this Memorandum Opinion.

Date: 23 February 2026
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

12